1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

----oo0oo----

11

12

J.E.P.M.,

13

          Petitioner,

14

    v.

15

WOFFORD, et al.,

16

          Respondents.

17

No. 1:26-cv-00316-WBS-CKD

MEMORANDUM AND ORDER DENYING
PETITIONER'S MOTION FOR
TEMPORARY RESTRAINING ORDER

18

----oo0oo----

19

20

       Petitioner, a citizen and native of Mexico, entered the

21

United States unlawfully, was taken into custody by Department of

Homeland Security ("DHS") officials, and subsequently paroled,

22

all on or about May 12, 2023.  (Docket No. 2 at 9.)  After being

23

paroled, petitioner established residence with his family members

24

in Stockton, California, where he worked in the construction

25

industry.  (Id. at 10.)  Nowhere does petitioner allege that his

26

27

28

1

presence in the United States is lawful.[1]

Petitioner alleges that when he appeared for a routine ICE check-in on October 25, 2025, as instructed, he was arrested and taken into custody.  (Id.)  At the time of his arrest, ICE officers informed petitioner that the reason for his arrest was that he had violated the terms of his parole eleven times.  (See id.)

On January 14, 2026, petitioner filed the instant motion for temporary restraining order seeking immediate release from custody on the grounds that his detention violates the procedural and substantive protections conferred by the Due Process Clause.  Petitioner further requests that the court enjoin respondents from re-detaining him absent a pre-deprivation hearing before a neutral arbiter.  (Id. at 7-8.)

I.   Temporary Restraining Order

"The standard for a [temporary restraining order] is the same as for a preliminary injunction." Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  Typically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc.,

---

[1]   Parole does not constitute lawful admission to the United States.  See 8 U.S.C. § 1182(d)(5)(A).

555 U.S. 7, 20 (2008).  The last two factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435 (2009).

Likelihood of success on the merits is "the most important factor in determining whether a preliminary injunction is warranted."  Garcia v. County of Alameda, 150 F. 4th 1224, 1230 (9th Cir. 2025) (internal citations and quotation marks omitted).  "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy."  Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation omitted).  A mere possibility of success is insufficient to satisfy this factor; instead, a petitioner must demonstrate "a strong likelihood of success on the merits."  Save Our Sonoran, Inc. v. Flowers, 408 F. 3d 1113, 1120 (9th Cir. 2005).

Petitioner claims that his motion may also be granted if he raises "serious questions as to the merits of his claims." (Docket No. 2 at 12 (citing Alliance for the Wild Rockies v. Cottrell, 632 F. 3d 1127 (9th Cir. 2011).)  This court has previously expressed disapproval of "the continued viability of the 'serious questions' test" in light of the Supreme Court's instruction that absent a "'clear command from Congress' to the contrary, the 'serious questions' test may not be used." E.R.J.B. v. Wofford, No. 1:25-cv-01843 WBS SCR, 2025 WL 3683118, at *2 (E.D. Cal. Dec. 18, 2025) (citing Starbucks Corp. v. McKinney, 602 U.S. 339, 346 (2024)).  In keeping with its past decisions and the Supreme Court's mandate, the court declines to

apply the "serious questions" test here.

    a.   Procedural Due Process

Petitioner argues that his detention violates due process because he was re-arrested without being provided a "pre-deprivation hearing before a neutral adjudicator where the government demonstrates by clear and convincing evidence that there has been a material change in circumstances such that he is now a danger or a flight risk." (See Docket No. 2 at 15-17.)

This court has now dealt with many petitions like this one, in which it held that noncitizens present in the United States who were never legally admitted were "applicants for admission" under 8 U.S.C. § 1225(b) and thus subject to mandatory detention. See, e.g., Alonzo v. Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *4 (E.D. Cal. Nov. 17, 2025) ("The suggestion that petitioner may evade the designation of 'applicant for admission' merely because he has already entered the United States elides the fact that he was never lawfully admitted."); Mo v. Chestnut, No. 1:25-cv-01789 WBS CSK, 2025 WL 3539063, at *2 (E.D. Cal. Dec. 10, 2025) (same); Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *3 (E.D. Cal. Nov. 17, 2025) (same); Xavier Oliveria v. Albarran, et al., No. 1:25-cv-01760 WBS AC, 2025 WL 3525923 (E.D. Cal. Dec. 9, 2025) (same); Mo v. Chestnut, No. 1:25-cv-01789 WBS CSK, 2025 WL 3539063 (E.D. Cal. Dec. 10, 2025) (same).

Petitioner makes no effort to distinguish his case from the nearly identical cases in which this court specifically held that noncitizens who have entered unlawfully, even if they were

4

encountered, taken into custody, and released on parole, were nevertheless "applicants for admission" subject to § 1225.  See, e.g., Oliveria, 2025 WL 3525923 (finding § 1225 applied to petitioner who had been detained after entering United States); Mo, WL 3539063, at *1 (noting that "noncitizens present in the United States who were never legally admitted [are] presumably 'applicants for admission,'" and applying § 1225); see also Liang v. Almodovar, et al., No. 1:25-cv-09322 MKV, 2025 WL 3641512, at *5 (S.D.N.Y. Dec. 15, 2025) (finding that noncitizen who unlawfully entered United States and was thereafter apprehended at the border did not effectuate a "lawful entry" into the United States and was thus subject to § 1225).

Petitioner thus presents neither facts nor arguments that distinguish his procedural due process claim from the claims adjudicated in this court's prior decisions.  Accordingly, the court once more concludes that "the procedure authorized by Congress" in 8 U.S.C. § 1225(b) constitutes procedural "due process" as far as petitioner is concerned.  Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953); see also Angov v. Lynch, 788 F.3d 893, 898 (9th Cir. 2015) (for noncitizen who "never technically 'entered' the United States," "procedural due process is simply whatever the procedure authorized by Congress happens to be." (citation modified)); Grigoryan v. Barr, 959 F.3d 1233, 1241 (9th Cir. 2020) (same).  And because 8 U.S.C. § 1225(b) does not "say[] anything whatsoever about bond hearings," petitioner is not entitled to one.  Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).

1

2       b.   Substantive Due Process

3           Petitioner also argues that, despite his parole

violations, his detention nevertheless violates substantive due

4   process because it was "arbitrary" and not "justified by a

5   sufficient purpose."  (See Docket No. 2 at 13-14 (citing Zadvydas

6   v. Davis, 533 U.S. 678, 690 (2001).)

7           Substantive due process does insulate individuals from

8   "arbitrary action of government."  Wolff v. McDonnell, 418 U.S.

9   539, 558 (1974).  However, the Supreme Court's cases "dealing

10  with abusive executive action have repeatedly emphasized that

11  only the most egregious official conduct can be said to be

12  arbitrary in the constitutional sense."  Cnty. of Sacramento v.

13  Lewis, 523 U.S. 833, 846 (1998) (citation modified).  "[T]he

14  threshold question is whether the behavior of the governmental

15  officer is so egregious, so outrageous, that it may fairly be

16  said to shock the contemporary conscience."  Johnson v. Brown,

17  567 F. Supp. 3d 1230, 1251 (D. Or. 2021) (citing Lewis, 532 U.S.

18  at 847 n.8 (1998)).

19          There can be many ways for government conduct to be

20  found arbitrary.  For example, the Supreme Court has held that

21  the "forced pumping of a suspect's stomach" is arbitrary in the

22  Constitutional sense, see Lewis, 523 U.S. at 846 (citing Rochin

23  v. California, 342 U.S. at 165, 209-10 (1952)), as is subjecting

24  students to corporal punishment, see Ingraham v. Wright, 430 U.S.

25  651 (1977) (citing Rochin).  That said, it is not always clear

26  what conduct rises to the level of arbitrariness in the

27  Constitutional sense.  One judge of this court, for example, has

28
                                    6

stated in a different context that "[d]etaining an individual without any explanation is not only chilling, but also flatly inconsistent with any notion of due process." Kuzmenko v. Phillips, No. 2:25-CV-00663 DJC AC, 2025 WL 779743, at *5 (E.D. Cal. Mar. 10, 2025), appeal dismissed sub nom. Martin v. Phillips, No. 25-3145, 2025 WL 2375268 (9th Cir. July 24, 2025). While that may or not be true as a general proposition, in this case there is a valid explanation for petitioner's detention.

Indeed, petitioner himself acknowledges that ICE informed him that they were re-detaining him on October 25, 2025, for violating the terms of his parole eleven times. (See Docket No. 2 at 10.) The government has therefore provided a "reasonable justification" for re-detaining him. See Lewis, 523 U.S. at 846. Moreover, as this court has explained in detail in its Order issued today in another case, DHS did not need any further reason to detain petitioner other than the fact that he entered and remains in the United States unlawfully. ECF No. 6 at 5-7, Singh v. Warden, et al., No. 1:26-cv-00244 WBS CSK (E.D. Cal. Jan. 16, 2026).

For the above reasons, petitioner has failed to demonstrate a likelihood of success on the merits of his procedural and substantive due process claims. Thus, the court "need not consider the other [temporary injunction] factors." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018).

It bears reiterating yet again that Congress has given DHS the very difficult task of ensuring that the millions of individuals who are unlawfully within the United States are

7

detained and removed as prescribed by law.  It is not the court's role to "judge the wisdom or desirability" of how DHS fulfills that mandate.  Cf. Heller v. Doe by Doe, 509 U.S. 312, 319 (1993).  The methods by which noncitizens are detained undoubtedly involve intricate details which the courts lack the Constitutional authority or practical resources to dictate.

IT IS THEREFORE ORDERED that petitioner's motion for a temporary restraining order (Docket No. 2) be, and the same hereby is, DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262, the case is referred to the assigned magistrate judge for further proceedings.

Dated:  January 16, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

8