UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.E.P.M. (A No. 246 981 062), | No.  1:26-cv-0316 WBS CKD P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| MINGA WOFFORD, et al., | |
| Respondents. | |

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  For the reasons which follow, the court recommends that the petition be granted.

I.  Facts

Petitioner, a native of Mexico, ECF No. 1-4 at 2, entered the United States on or around May 12, 2023, from Matamoros, Mexico.  ECF No. 1-1 at 1.  Petitioner was detained for approximately 8 hours and then released into Texas subject to the Intensive Supervision Appearance Program (ISAP).  Id.  Ultimately, petitioner found his way to Stockon and resided with his uncle, aunt, and their two children.  Id. at 1 & 2.

A term of petitioner's release was that he check in with ICE officials approximately once a month via a telephone app.  Id. at 2.  Petitioner claims he consistently complied, or attempted to

/////

1

comply with all reporting requirements, but there were a few occasions, possibly three, where technical difficulties precluded compliance.  Id.

On October 25, 2025, petitioner appeared as directed at an ICE office in Stockton.  Id. at 3.  Petitioner was arrested and told arrest was due to eleven ISAP violations.  Id.  It does not appear petitioner was provided with specifics.  Petitioner has remained in custody ever since and is currently housed at the Mesa Verde ICE Processing Center in Bakersfield.   Id.

Petitioner appeared for a custody redetermination hearing on December 5, 2025.  ECF No. 10-1.  The judge presiding over the hearing found a lack of jurisdiction to consider whether petitioner should be released.  Id.

It appears the last hearing related to petitioner's immigration was held February 9, 2026. ECF 1-3 at 2.  The current status of proceedings is not clear.

Petitioner has been granted permission to work in the United States by the Department of Homeland Security (DHS) through November 12, 2029.  ECF No. 1-4 at 2.  Prior to arrest, petitioner worked in construction with his uncle.  ECF No. 1-1 at 2.

Petitioner fears returning to Mexico because, while in Mexico, petitioner was kidnapped and beaten by cartel members.  ECF No. 1-1 at 4.

Petitioner has no criminal record.  Id. at 2.

II.  Standard for Habeas Relief

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III. Violation of Fifth Amendment

    A. Liberty Interest

As indicated above, petitioner was denied a pre-deprivation hearing before a neutral arbiter to determine whether he violated any terms of his release. Petitioner claims this violates his right to due process under the Fifth Amendment. ECF No. 1 at 23-24. Generally speaking, the Due Process Clause applies to all persons within the "geographic borders" of the United States. Id. at 693. "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." Plyler v. Doe, 457 U.S. 202, 210 (1982). Due process protection applies to non-citizens who have "passed through our gates." Shaughnessy v. U.S. ex rel. Mezei, 345 U.S. 206, 212 (1953). Even in the immigration context, government detention is permissible "only 'in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Kong v. United States, 62 F.4th 608, 616 (1st Cir. 2023) (quoting Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [ v. Brewer, 408 U.S. 471 (1972)]." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, the parolee's "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to

3

the parole conditions." Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in "continued liberty." Id. at 481-84.

The regulations authorizing ICE to release a noncitizen from custody into the United States require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).  Similarly, a noncitizen can be paroled into the United States for "urgent humanitarian reasons" only if the noncitizen presents "neither a security risk, nor a risk of absconding." 8 C.F.R. § 212.5(b).  Release under these regulations "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

In light of all of the foregoing, the court finds that petitioner's initial release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk or dangerous.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest).  "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody he has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).  "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Respondents argue that petitioner's re-arrest and detention were mandated by statute because although petitioner was physically admitted into the United States, he remains an "applicant for admission" under 8 U.S.C. § 1225(b) not entitled to due process protection.  For support, respondents point to DHS v. Thuraissigiam, 591 U.S. 103 (2020) in which the Supreme Court found that an alien arrested inside the United States near the border around the time of his illegal entry, detained, and ordered removed was not a person present in the country and therefore was not entitled to due process protection.

/////

4

While petitioner still may be an "applicant for admission" as that term is defined in 8 U.S.C. § 1225(b), he has also been allowed to "pass through our gates," Mezei, 345 U.S. at 212, and is a person within the border of the United States entitled to Due Process under Zadvydas. These facts distinguish him from Supreme Court precedent as to persons:  (1) detained at or near the border and never released into the country, i.e. Thuraissigiam;  Ekiu v. United States,  142 U.S. 651 (1892) (petitioner allowed off ship in San Francisco, but ordered detained at nearby mission) and (2) persons released into the country, but already subject to a final order of removal, i.e. Kaplan v. Tod, 267 U.S. 228 (1925) (petitioner denied admission at Ellis Island and ordered removed was released to custody of an immigrant aid society while deportation suspended during World War I).[1]

The undersigned rejects the premise that petitioner, who was released into the country, has never been charged with a crime, has not been ordered removed, and has ties to the Stockton community does not possess the most fundamental of rights not to be deprived of life, liberty or property by the executive for any reason the executive sees fit.  See Jennings v. Rodriguez, 583 U.S. 281, 332 (2018) (Breyer, J., dissenting) ("Freedom from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries.").  Denying petitioner due process protection because he is technically an "applicant for admission" as opposed to an "admittee" as those terms are defined in immigration law, "subordinates fact to fiction, [and] disregards the plain meaning of the Due Process Clause, which promises its protection to every person within the United States." Rincon v. Hyde, No. 15-12633 BEM, 2025 WL 3122784, * 2 (Dist. of Mass., November 7, 2025) (internal quotation omitted).  "Indeed, to apply the entry fiction doctrine to a case like Petitioner's is to set aside the plain meaning of the Fifth Amendment altogether." Id. at * 7.

/////

/////

---

[1] In Leng May Ma v. Barber, 357 U.S. 185 (1958), the Supreme Court found that a petitioner allowed entrance into the U.S. while her admission was under consideration was not entitled to certain statutory protections.  The requirements of the Due Process clause were not at issue.

5

B.  Process Due

Next, the Court turns to what procedures are necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context).  "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a paramount interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.).

"The risk of an erroneous deprivation [of liberty] is high" without any required process and, in particular, when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 1:25-cv-0197 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Nothing suggests the officials who decided to detain petitioner made any attempt to determine whether he was dangerous or a risk of flight.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025).  Detention hearings in immigration courts are routine and impose a

6

"minimal cost." Id.   Further, such hearings provide help to ensure ICE officers act within the boundaries of the law which is within ICE's interest.

Considering any person in the United States has a supreme interest in liberty, the likelihood of erroneous deprivation of liberty by ICE without any guardrails and that the DHS already has immigration courts in place to ensure deprivation of liberty is lawful, petitioner is entitled to a bond hearing finding that results in a legal justification for detention.  Further, "[a]n essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are entitled to due process, including a pre-deprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V. v. Wofford, 1:25-cv-2381 KES SAB, 2025 WL 3083934 at *6 (E.D. Cal. Nov. 4, 2025) (collecting cases).  Nothing in the record before the court suggests there were any "urgent concerns" for detaining petitioner without a hearing and thus "a pre-deprivation hearing [was] required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

IV.     Remedy

Having found that petitioner's Fifth Amendment right to due process was violated based on the lack of a pre-deprivation hearing, the undersigned finds that petitioner is entitled to immediate release from custody.  A post-deprivation hearing at this juncture is not an adequate remedy as identified above and because it would condone the violation of petitioner's right to due process in the first instance.  See also E.A. T.-B v. Wamsley, No. 25-1192-KKE, 2025 WL 2402130, *5 (W.D. Wash. Aug. 19, 2025).

/////

/////

/////

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 10) be DENIED.

2. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

3. Petitioner be released from Immigration and Customs Enforcement Service custody.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven (7)** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within **seven (7)** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 6, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
jepm0316.imm.frs